MEDINA LAW FIRM LLC
641 Lexington Avenue
Thirteenth Floor
New York, NY 10022
Tel. (212) 404-1742
Fax. (888) 833-9534

*Proposed Attorneys to JCV Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

JCV GROUP, LLC

Debtor-in-Possession

Case No. 19-13563-mg

Chapter 11

**DECLARATION OF DAVID MALEH: (I) IN SUPPORT OF FIRST DAY MOTIONS AND APPLICATIONS; AND (II) PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

I, **DAVID MALEH**, of full age, declare pursuant to 28 U.S.C. §1746 as follows:

1. I am the Chief Executive Officer of JCV Group, LLC ("Debtor" or "JCV"). I make this declaration in compliance with Local Bankruptcy Rule 1007-2 (this "Declaration"). Unless otherwise set forth herein, I have personal knowledge of the facts set forth below or have consulted with responsible parties with personal knowledge concerning these matters and if called as a witness I could and would testify competently thereto.

**BACKGROUND OF THE DEBTOR**

2. JCV designs and manufactures its own brands as well as licensed wholesale baby, home and pet products that it sells domestically and internationally. JCV was established in and is based in New York City, operating from its offices and

showroom at 65 West 37th Street, Suite 300, New York, New York. JCV is a New York LLC whose members boast 30 plus years of experience in manufacturing and wholesale.

### A. JCV's Capital Structure

3. In 2017, JCV had gross sales of $9,155,547.00 dollars leaving approximately $2,089,519 in gross margin. In 2018, JCV increased sales drastically, by nearly 30%, yielding gross revenue in the amount of $13,267,850.00 with gross margin of $2,748,222-a significant increase with only a modest rise in expenditures. 2019, however, has proven to be far different and has been characterized by a lack of interest in the marketplace for a number of its branded products. This lack of demand coupled with costly minimum guaranteed royalties to licensors has resulted in dismal sales through September 2019, of only $5,572,391.49.

### B. JCV as Licensee

4. JCV is a party to a number of valuable licensing agreements for manufacture and sale of branded products in particular categories with Authentic Brands Group, Inc. ("ABG")[1] as licensor (or license administrator) these include the following:

 (a) ABG-AERO IPCO, LLC dated July 1, 2017 ("Aero");

 (b) Estate of Marilyn Monroe LLC dated January 1, 2018, ("MM");

 (c) ABG Juicy Couture, LLC dated August 1, 2018 ("Juicy");

 (d) ABG-Shaq, LLC dated January 1, 2018, ("Shaq")

---

[1] Many of the licenses are with what are believed to be related single purpose entities to ABG in which particular brands of intellectual property rights are held and licensed to third parties like JCV. For purpose of this Declaration, ABG is referred to as the Licensor, notwithstanding that the specific actual licensor may be a related entity (e.g. ABG-AERO IPCO, LLC).

{00075678 2}                           2

    (e)    Muhammad Ali Enterprises, LLC dated January 1, 2018, ("Muhammad")

    (f)    ABG-EPE IP LLC, dated January 1, 2018, ("Elvis Presley")

    (g)    Dog for Dog, LLC dated October 8, 2018, ("Dog for Dog"); and

    (h)    US Army Trademark Licensing Program dated January 1, 2018 ("US Army")

Collectively, the above-described licenses represent a significant source of income for JCV and more importantly, the above licenses authorize the sale and manufacture of approximately $492,276.30 in branded inventory most of which, if not all, is already sold, in transit to buyers, or is the subject of confirmed purchase orders as of this date. Additionally, JCV is party to a strategic alliance agreement with Samsung C&T America, Inc. ("Samsung Fashion") by which Samsung Fashion is JCV's exclusive purchasing and finance agent in a certain delineated territories for certain products in which Samsung Fashion purchase, imports, and delivers products owned by or licensed through JCV.

    C.    **Events Leading to the Chapter 11 Petition**

5.    JCV's profitability has suffered drastically in light of several industry-wide and JCV specific losses. By way of example, JCV suffered an immediate $500,000 loss resulting from the *In re National Stores Inc.* bankruptcy case[2] which saw the closing of several Fallas retail stores-key buyers of JCV products. Similarly, JCV suffered a more than $500,000 dollar loss earlier this year resulting from inventory thefts at public warehouses in the State of New Jersey and the State of California. Though JCV did in fact insure their inventory against these losses, JCV is presently in protracted talks with

---

[2] Filed in the District of Delaware.

{00075678 2}    3

its insurance carrier who has, as of this date, yet to conclude its investigation over whether it will honor the warehouse loss claim and pay JCV for the stolen inventory.

### D. Licensing Relationship Dispute

6. Over the course of the last several quarters, the minimum guaranteed royalties ("MGR") payable to ABG on a number of brands and products have become onerous. In many instances, the cost of the MGR's far exceeds the sales of the licensed products resulting in a significant loss to the Debtor. The high costs of the MGR's coupled with, in some instances the narrowing of sales channels and in other instances refusal to expand sales channels by ABG, resulted in the Debtor making costly payments to maintain standing with ABG despite an unfavorable demand from buyers for the licensed goods in question within channels made available to JCV and approved under the relevant licenses.

7. Despite having made every MGR payment to ABG, prior to October 2019, and working diligently to reduce operating expenses through staff cuts and downsizing, following the inability to make the October MGR payment to ABG, ABG notified JCV of a default of the license agreements. In its default correspondence, ABG asserted it had the right to, but not the obligation, to terminate the licenses as a result of the defaults. Amongst others, ABG asserted in its correspondence to JCV that upon termination, JCV would lose the ability to sell branded merchandise licensed by ABG, which as a practical matter jeopardizes the entirety of JCV's branded inventory which as stated above is worth $492,276.30.

8. JCV had hoped to reach a mutually acceptable compromise with ABG regarding the default notices transmitted in late October from ABG; however, JCV

received email notices of termination after-hours on November 5, 2019 at approximately 7:30 p.m. which-purported to become effective 24 hours later on November 6, 2019. Hard copy notices sent via UPS still have not been received. As a result, JCV had no choice but to seek protection in chapter 11 on an emergency basis to avoid a forfeiture of the ability to sell its already produced and sold inventory by resort to the protections embodied in the automatic stay under 11 U.S.C. §362 and to further preserve the value of its estate for all of its creditors and stakeholders involved through the valuable licenses in which it has invested significant monies and goodwill.

### E. Employees

9. As of this date, JCV employs and contracts with approximately 5 full and part-time employees at its showroom and offices in New York City. In addition, JCV relies on 12 independent "1099" contractors with whom it regularly conducts business in the nature of commission sales.

### F. Secured Creditors

10. JCV has a small secured creditor body. JCV is a party to that certain 'Discount Factoring Agreement with Merchant Factors Corp.' ("Merchants" or "Factor") dated April 4, 2016 by and between Merchants as factor and JCV as account debtor ("Factoring Agreement"). Pursuant to the Factoring Agreement, JCV sold its purchase order receivables-which were financed by Merchants pursuant to the terms of the Factoring Agreement. As collateral, Merchants took both the right to receive payment from the ultimate customer in addition to a first priority blanket lien against all of JCV's assets, inventories and general intangibles. Following a successful relationship with Merchants through 2018 and with the consummation of the Samsung agreement

referenced above, JCV was able to eliminate its need for purchase order financing from Merchants and no longer needed to factor invoices through the lender to continue its operations. As such, Merchants has not extended credit to JCV for some time. As of this date however, Merchants is owed approximately $160,000 as a result of charge-backs and disputed invoices from JCV customers which were assigned to Merchants under the Factoring Agreement and which were not paid by the customers, all of which represent secured claims under the Factoring Agreement. As such, it is believed that Merchants will assert a secured claim in the amount of $160,000 against the Debtor's estate.

### G. General Unsecured Creditors

11. JCV has a number of unsecured creditors consisting of vendors and service providers and importantly its landlord at its showroom and offices[3]. JCV estimates its total unsecured creditor body is $3.6 million and the value of its assets is conservatively, $1.97 million.

### H. First Day Motions

12. Contemporaneously with the commencement of these cases I have authorized the Debtor to file the following "First Day" pleadings which are necessary and critical to the Debtor's overall success in this Chapter 11 case, they are as follows:

1. Debtor's Motion for Order Authorizing the Debtor-in-Possession to Pay and Honor Certain Pre-petition Claims for Wages, Salaries, Employee Benefits and Other Compensation and Withholdings and Deductions, Continue to Provide Employee Benefits in the Ordinary Course of Business, Pay all related costs and expenses and Directing banks to receive, process, honor and pay all checks presented for payment and electronic payment requests related to the foregoing;

---

[3] In the preceding weeks JCV was working closely with its landlord to consensually surrender a part of its showroom space in order to minimize its monthly leasehold commitments.

{00075678 2}                                                6

2. Debtor's Application for an Order Authorizing Debtor's Interim and Final Use of Cash Collateral pursuant to 11 U.S.C. Sections 361 and 363 and Granting Adequate Protection, Scheduling Final Hearing ,

3. Debtor's Motion for an Entry of an Order: (A) Granting Interim Relief Pursuant to 11 U.S.C. 366(b); (B) Authorizing the Payment of Adequate Assurance for Postpetition Utility Service Services; and (C) Fixing Final Hearing Date to Determine Adequate Assurance; and (D) Granting Other Related Relief.

4. Debtor's Motion for Entry of an Order Authorizing: (I) the Debtor's Continued Use of their Cash Management Systems; (II) Existing Bank Accounts; (III) Business Forms and Books and Record; and (IV) Granting Related Relief.

I submit that the foregoing together with the motions and Top 20 Unsecured Creditor list filed contemporaneously with the petition in this case sets forth the information required pursuant to Local Bankruptcy Rule 1007-2 of the U.S. Bankruptcy Court for the Southern District of New York.

I declare under the penalties of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 6, 2019
New York, NY

_____
David Maleh